**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**RENAEE TACKETT**                                                                 **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 1:16-cv-181-MTP**

**CAROLYN W. COLVIN**                                                      **DEFENDANT**

## OPINION AND ORDER

Plaintiff Renaee Tackett brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying her claim for disability insurance benefits.  The parties have briefed the issues in this matter in accordance with the Court's Scheduling Order [3], and the matter is now ripe for decision.  After reviewing the parties' submissions, the record, and the applicable law, the Court finds that the Plaintiff's Motion for Judgment on the Pleadings [9] should be DENIED, the Commissioner's final decision should be AFFIRMED, and this action should be DISMISSED.

## PROCEDURAL HISTORY

On September 10, 2013, Plaintiff applied for disability insurance benefits, alleging disability beginning on July 18, 2013, due to sciatica, back pain, and hypertension. (Administrative Record [5] at 197-200; 229).  Plaintiff's claim was denied initially and upon reconsideration. ([5] at 133-38; 147-53).  Thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"), and on March 19, 2015, an ALJ held a hearing, during which Plaintiff and a vocational expert testified. ([5] at 79-106).  On June 30, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. ([5] at 17-27).  Plaintiff appealed the ALJ's decision to the Appeals Council, and on March 31, 2016, it denied Plaintiff's request for

review, rendering the ALJ's decision the final decision of the Commissioner. ([5] at 5-9).

Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

### SUMMARY OF THE FACTUAL AND MEDICAL HISTORY

Plaintiff was fifty-two years old at the time of her alleged disability onset date.  She has a ninth-grade education and has past work experience as a fast food restaurant manager, caretaker, poultry production worker, and janitor. ([5] at 197; 230).

According to Plaintiff, she began to experience lower back pain in July, 2013.  Plaintiff alleges that in August, 2013, she went to the emergency room, where physicians diagnosed her with sciatica and advised her to see a neurosurgeon.  On October 15, 2013, Plaintiff saw a neurosurgeon, Dr. Terry Smith.  Dr. Smith prescribed her a pain medication and noted that it was "[h]ard to know what to do without MRI." ([5] at 330-31).  An MRI taken on October 28, 2013, revealed (1) moderate spinal canal stenosis[1] involving T12/L1 and L2/L3; (2) mild spinal canal stenosis involving L1/L2, L4/L5 and L5/S1; and (3) multilevel mild to moderate neural foraminal stenosis. ([5] at 318-19).  On November 5, 2013, Plaintiff again saw Dr. Smith who noted that he reviewed the MRI films with Plaintiff and offered her the options of surgery, physical therapy, or injections.  At that time, Plaintiff opted for physical therapy. ([5] at 327-28).

On November 8, 2013, the Office of Disability Determination Services sent Dr. Smith a disability report form, to which Dr. Smith replied that Plaintiff was not disabled and "had been offered surgery that has 90% success rate and refused." ([5] at 323-24).  On November 12, 2013,

---

[1] Spinal stenosis is narrowing of the vertebral canal, nerve root canal, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space. <u>Dorland's Illustrated Medical Dictionary</u> 1698 (29th ed. 2000).

a state agency medical consultant, Dr. William Hand, determined that Plaintiff had the capacity for light work. ([5] at 133-38).[2]

On December 24, 2013, Plaintiff saw Dr. Smith, complaining that her pain was getting worse.  Dr. Smith noted that physical therapy had not occurred.  Plaintiff and Dr. Smith discussed her stenosis, and she elected to have surgery. ([5] at 324-25).  The Office of Disability Determination Services again sent Dr. Smith a disability report form on January 21, 2014, and Dr. Smith again replied that he did not find Plaintiff to be disabled.  He referenced the ninety-percent success rate of her scheduled surgery and stated that he expected her to be able to return to work within six to eight weeks of the surgery. ([5] at 336).

On January 30, 2014, Plaintiff's surgery had to be postponed until her high blood pressure was under control. ([5] at 343).  On May 29, 2014, Dr. Smith performed surgery on Plaintiff. ([5] at 352).  According to Plaintiff, she saw Dr. Smith for follow-up visits in June and July of 2014 and Dr. Smith released her to return to work with certain restrictions, including lifting no more than thirty pounds and wearing a back brace. ([5] at 300).

Plaintiff returned to work as a manager of a fast food restaurant on August 2, 2014, but Plaintiff allegedly began experiencing an exacerbation of her back pain.  On October 19, 2014, Plaintiff was allegedly terminated after she missed work on multiple occasions. ([5] at 300-01).  On November 13, 2014, Plaintiff went to the emergency room, where she was diagnosed with back pain and degenerative joint disease of lumbar spine. ([5] at 301, 346).  On November 19, 2014, Dr. Smith instructed Plaintiff to undergo physical therapy. ([5] at 302).  Plaintiff went to

---

[2] On March 13, 2014, another state agency medical consultant, Dr. Robert Culpepper, agreed with Dr. Hand's findings. ([5] at 147-51).

three physical therapy sessions in December, 2014, but had to cancel additional appointments because she had "no money for gas, no ride." ([5] at 302; 408-18).

Plaintiff returned to Dr. Smith's office on February 10, 2015, complaining that the pain she was experiencing differed from what she felt prior to the surgery. Dr. Smith instructed Plaintiff to continue physical therapy and recommended an MRI to determine if there had been any change in her lumbar spine. ([5] at 396-97). Plaintiff went to six physical therapy sessions from February 24, 2015, to March 19, 2015. ([5] at 419-436).

An additional MRI was taken on April 9, 2015, and five days later, Plaintiff saw Dr. Smith, who noted the following:

> MRI of the lumbar spine was reviewed with the patient and looks good; she has the usual post-op scar, nothing causing nerve compression. Not much more to do at this point. Her thoughts today were focused on getting a copy of her medical records to send to the lawyer helping her get disability.

([5] at 440-44).[3]

## BURDEN OF PROOF

In *Harrell v. Bowen*, the Fifth Circuit detailed the shifting burden of proof that applies to disability determinations:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):
>
> > 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

---

[3] After the ALJ rendered her opinion, Plaintiff received a letter dated August 3, 2015, from a district manager of the Mississippi Department of Rehabilitation Services stating that in her opinion "Ms. Tackett is unable to return to work due to limitations with ambulation, standing, bending, lifting and severe pain." ([5] at 456).

2.  An individual who does not have a 'severe impairment' will not be found to be disabled.

3.  An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4.  If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.

5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

862 F.2d 471, 475 (5th Cir. 1988) (citations and footnotes omitted).  A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis."  *Id*.

## ADMINISTRATIVE LAW JUDGE'S ANALYSIS

The ALJ held a hearing in this matter and, upon applying the five-step sequential analysis described above, rendered a decision that Plaintiff was not disabled.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 18, 2013, her alleged disability onset date.[4]  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, hypertension, and obesity.  At step three, the ALJ found that these impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([5] at 20-21).

---

[4] The ALJ noted that Plaintiff worked from August 2, 2014, to October 19, 2014, earning $1,942. This activity did not rise to the level of substantial gainful employment as Plaintiff's earnings were modest.

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[5] to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb, stoop, kneel, crouch and crawl; and should have no exposure to unprotected heights or hazardous machinery."  The ALJ went on to determine at step four that Plaintiff could not perform any past relevant work, but found at step five that jobs existed in significant numbers in the national economy that she could perform.  Accordingly, the ALJ found that Plaintiff was not disabled. ([5] at 22-27).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983).   To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established."  *Id.* (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted).  Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990).  A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the

---

[5] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. 419.945.

Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell*, 862 F.2d at 475. If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff raises the following issues for review:

(1) Whether or not the ALJ inappropriately gave "partial weight" to Dr. Terry Smith's non-medical opinions that Claimant was not disabled, when bald assertions of that type should not be given any special significance.

(2) Whether or not the ALJ should have considered Dr. Smith's pre-surgery bald assertions regarding disability, made in November of 2013 and January of 2014, which had little, if any, bearing on Claimant's physical condition after the 5/29/14 surgery and at the time of the 3/19/15 hearing.

(3) Whether the ALJ inappropriately considered Dr. Terry Smith's records, which were clearly incomplete and self-contradictory as opposed to Encore Physical Therapy records showing Claimant has difficulty walking, an antalgic gait and is disabled from working.

(4) Whether the ALJ failed to consider statements from Social Security physicians that the Claimant's medically determinable impairments could be reasonably expected to produce her pain or other symptoms and that her statements about the intensity, persistence, and functionally limiting effects of her symptoms were substantiated by the objective medical evidence alone.

(5) Whether the ALJ should have placed limitations on the Claimant's ability to sit, stand or walk, in assessing Claimant's Residual Functional Capacity.

(6) Whether the ALJ should have used the Medical-Vocational Guidelines to find Claimant disabled, since, at the time he rendered his decision, Claimant was one week from reaching the age of 55 and would have been clearly disabled based on the Medical-Vocational Guidelines.

(7) Whether the Appeals Council should have remanded the case to the ALJ to obtain complete records from Dr. Terry Smith, and consider these, along with

7

the new evidence submitted to the Council show herniated disc at other levels of the Claimant's spine and a finding by MS Dept. of Rehabilitation Services, that the Claimant is disabled.

### *The Weight Given to the Opinions of the Medical Professionals*

In the first three issues raised by Plaintiff, she argues that the ALJ failed to properly assess the opinions of the medical professionals in this case.  According to Plaintiff, the ALJ erred when she gave "partial weight" to Dr. Terry Smith's January 28, 2014, opinion that Plaintiff was not disabled because she was scheduled to have surgery with a success rate of ninety percent.  Plaintiff argues that Dr. Smith's opinion was conclusory and that the opinion, along with the similar opinion rendered on November 11, 2013, had little bearing on Plaintiff's physical condition after her May 29, 2014, surgery.  Plaintiff also argues that Dr. Smith's records were incomplete and inconsistent and were contradicted by Plaintiff's physical therapy records.

The weight to be given a physician's statement is dependent upon the extent it is supported by specific clinical findings. *Elzy v. Railroad Retirement Board*, 782 F. 2d 1223, 1225 (5th Cir. 1986); *Jones v. Heckler*, 702 F.2d 616, 621 (5th Cir. 1983).  An acceptable medical opinion as to disability must contain more than a mere conclusory statement.  It must be supported by clinical or laboratory findings. *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981).  A treating physician's opinion regarding the nature and severity of a patient's condition is normally given controlling weight, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  The ALJ, however, has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Id.*

8

The record demonstrates that the ALJ did not solely base her decision on the opinions rendered by Dr. Smith on November 11, 2013, and January 28, 2014.  The ALJ specifically found as follows:

> On January 28, 2014, Dr. Smith stated he did not support disability because the claimant was having a surgery with 90 percent success rate, and he expected her to return to work six to eight weeks post-operatively.  Partial weight is given to this opinion, to the extent it is consistent with the residual functional capacity based on his normal examination finding after surgery and the results of the 2015 MRI showing no nerve compression.

([5] at 25).  The ALJ's opinion shows that she carefully considered the medical records from Plaintiff's treating sources pre- and post-operation.

As the ALJ pointed out, Plaintiff was discharged to return to work three months after her surgery and an MRI taken on April 9, 2015, revealed no new problems.  Dr. Smith did not indicate that Plaintiff had any restrictions during her April 14, 2015, visit.  In fact, Dr. Smith said her lumbar spine "looks good." ([5] at 24; 440-44).  Additionally, Plaintiff's primary care physician, Dr. Weymoth Crowell, did not suggest that Plaintiff needed further intervention or specialized treatment during Plaintiff's March 5, 2015, visit. ([5] at 372-76).

Plaintiff also argues that Dr. Smith's records were internally inconsistent and contradicted by Plaintiff's physical therapy records.  The ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *see also* 20 C.F.R. § 404.1527(c)(2) ("if any of the evidence in your record, including any medical opinions(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").  The ALJ pointed out that the physical therapy notes reflected a slow antalgic gait with decreased stride length, while Dr. Smith noted a normal gait in his findings. ([5] at 24).  It should also be pointed out that

Plaintiff's physical therapy notes indicated that Plaintiff's "[o]verall rehabilitation potential is fair." ([5] at 410-20). Although certain portions of the medical records provide support for Plaintiff's assertions, other portions of the records serve as credible evidence supporting the ALJ's determination. This Court does not resolve conflicts in the evidence; that is left to the discretion of the Commissioner, and Plaintiff has failed to show that no credible evidence choices or medical findings support the ALJ's decision. *Selders*, 914 F.2d at 617; *Boyd*, 239 F.3d at 704.

Additionally, Plaintiff contends that the ALJ failed to obtain additional medical records from her treating physician, and in doing so, failed to fully develop the record. Specifically, Plaintiff argues that Dr. Smith did not provide records from five office visits in 2014, including visits on March 22, May 7, June 20, July 18, and November 19. While an ALJ is not responsible for securing evidence of disability for a claimant, the ALJ has a duty to fully and fairly develop the facts relative to a disability claim. *Kane v. Heckler*, 731 F.2d 1216, 1219-20 (5th Cir. 1984). Nevertheless, the ALJ's failure to adequately develop the record does not automatically warrant reversal. *Id.* The claimant must still demonstrate that she was prejudiced thereby. *Id.* "To establish prejudice, a claimant must show that [s]he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (internal quotes omitted).

Assuming, for purposes of discussion, that the ALJ did not fully develop the record, Plaintiff has not demonstrated resulting prejudice. Plaintiff has not demonstrated that the missing medical records would have materially affected the ALJ's decision, and it is difficult to perceive how these medical records would have impacted the ALJ's decision. The ALJ considered medical records from before March 22, 2014, and after November 19, 2014. As

10

noted, Dr. Smith reviewed an MRI taken on April 9, 2015, and determined that Plaintiff's lumbar spine "looks good." ([5] at 440-44). Plaintiff has the burden to demonstrate to the Court that no substantial evidence supports the ALJ's decision, and Plaintiff has not met that burden.

***The Credibility Determination***

Plaintiff argues that the ALJ failed to properly consider Plaintiff's symptoms and her subjective complaints regarding her symptoms. An ALJ should consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms described by the claimant. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. Once an impairment is found, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities. *Id*. An ALJ should consider a claimant's subjective complaint, but a claimant's own statements regarding her pain and symptoms are not determinative of disability status. 20 C.F.R. § 404.1529. "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

The ALJ was required to make affirmative findings regarding the Plaintiff's subjective complaints. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). The ALJ stated: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible for the reasons explained in this decision." ([5] at 24).

Plaintiff argues that this opinion is contradicted by the opinions of the state agency medical consultants, Dr. Hand and Dr. Culpepper who answered "yes" to the following question:

"Are the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms substantiated by the objective medical evidence alone?" ([5] at 141; 151).  It should be noted, however, that both Dr. Hand and Dr. Culpepper found that Plaintiff had the capacity for light work.

The record indicates that the ALJ considered the medical evidence and detailed her reasons for partially discounting Plaintiff's allegations regarding her limitations.  The ALJ stated:

> The claimant developed worsening low back pain while working at Burger King. She filed a Worker's Compensation claim, which resulted in her treatment by Dr. Smith.  Lumbar MRI demonstrated mild to moderate stenosis secondary to disc bulges.  The claimant underwent surgery in late May 2014, and was discharged to return to work three months later.  Exhibit 17E.  The lifting limitations set by Dr. Smith would have allowed for the performance of light work.  He did not indicate any restrictions at the April 2015 visit, and the new MRI showed no new problems. While she alleged total disability, she would not be precluded from performance of all work by her alleged impairments.
>
> The claimant acknowledged her condition initially improved after surgery.  There were no objective findings afterward of recurrent herniation or any new back injury or condition.  She received physical therapy and training in home exercises. Although the physical therapy notes reflected slow antalgic gait with decreased stride length, Exhibit 9F, Dr. Smith noted normal gait in his findings, Exhibit 8F. When seen by Dr. Smith in February 2015, the claimant reported she had pain but which was different than before surgery. Exhibit 8F.  There is no persuasive corroborating evidence for the duration, frequency or intensity of pain and other limitations she alleged.  Her primary care physician, Dr. Crowell, prescribed pain medication but there were no suggestions from him that she needed further intervention or specialized treatment. Exhibit 7F.

([5] at 24-25).

The ALJ's findings regarding Plaintiff's symptoms is supported by substantial evidence. "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).  The ALJ found that the medical evidence was more persuasive than

Plaintiff's subjective complaints—precisely the kind of determination an ALJ is best positioned to make.

***Plaintiff's Residual Functional Capacity***

As previously mentioned, the ALJ determined that Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb, stoop, kneel, crouch and crawl; and should have no exposure to unprotected heights or hazardous machinery." Plaintiff argues that the ALJ erred by not placing any limitations on Plaintiff's ability to sit, stand, or walk.

The responsibility for determining a claimant's RFC is reserved to the Commissioner and at the hearing level, that assessment is entrusted to the ALJ. 20 C.F.R §§ 404.1527(e)(2), 404.1546(c). An ALJ has a duty to develop the record before her and must make an RFC assessment that is supported by substantial evidence. The claimant, however, bears the burden of demonstrating that the ALJ's determination is not supported by substantial evidence. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). According to the ALJ, she considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529, 416.929 and SSRs 96-4p; 96-7p. The ALJ also considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527, 416.927 and SSRs 96-2p, 96-6p, and 06-3p.

The ALJ considered Plaintiff's testimony that she "could walk for 15 to 20 minutes and then would have to sit down," and that, when sitting, she "squirmed around and adjusted from side to side." The ALJ also noted that she rode a bicycle and performed leg stretches during physical therapy. ([5] at 24). The ALJ considered that after Plaintiff's surgery, Dr. Smith

released her to return to work with limitation of "lifting no more than thirty pounds and wearing a back brace." ([5] at 22-23).  The ALJ pointed out that in April, 2015, Dr. Smith noted that Plaintiff had a normal neurological exam, motor strength of five out of five, intact reflexes and sensation, and a normal gait.  The ALJ again noted that Dr. Smith reviewed the MRI taken that month and stated that it "looks good." ([5] at 23).

Plaintiff points to evidence that suggests that she has difficulty sitting, standing, and walking, such as her statement in physical therapy that she "has had difficulty with any activity since she is unable to sit, stand or walk for any length of time." ([5] at 417).  Indeed, certain records support Plaintiff's assertion that she has difficulty sitting, standing, and walking, but other records serve as credible evidence supporting the ALJ's determination that Plaintiff does not have such limitations.  Again, this Court does not resolve conflicts in the evidence.  Plaintiff has the burden to demonstrate to the Court that no substantial evidence supports the ALJ's decision.  Plaintiff has not met that burden.

***Step Five of the Sequential Analysis***

At step five of the sequential analysis, the ALJ noted that claimant was born on July 7, 1961, and was fifty-two years old on the alleged disability onset date, which is defined as "closely approaching advanced age."  The ALJ also noted that Plaintiff has a ninth grade education, is able to communicate in English, and has no transferable work skills.  Given these facts, the ALJ determined that "[i]f the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.11." ([5] at 25-26).  The ALJ further explained that Plaintiff's ability to perform all or

14

substantially all of the requirements of light work has been impeded by additional limitations,[6] and in order to determine the extent to which these limitations erode the unskilled light occupational base, the ALJ would need to consult the VE.  Thus, the ALJ asked the VE "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity."  The VE testified that such an individual would be able to perform the requirements of jobs such as mail clerk, cafeteria attendant, and cashier. ([5] at 26).

Plaintiff points out that her birthday is July 7, 1961,[7] and asserts that the ALJ's decision was entered on June 30, 2015, one week before her fifty-fifth birthday, which is considered "advanced age."  Plaintiff further points out that if she had been "advanced age," she would have been considered disabled based on the Medical-Vocational Guidelines.  Plaintiff argues that the ALJ failed to use the Medical-Vocational Guideline as a framework for her decision and failed to consider whether to use the older age category in assessing Plaintiff's disability.

The regulations provide that,

We will not apply the age categories mechanically in a borderline situation.  If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. §§ 404.1563(b), 416.963(b).

First, the Court notes that the day the ALJ rendered her opinion—June 30, 2015—was actually one week before Plaintiff's *fifty-forth* birthday.  Thus, at the time the ALJ rendered her

---

[6] The ALJ determined that Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb, stoop, kneel, crouch and crawl; and should have no exposure to unprotected heights or hazardous machinery."

[7] There are numerous references in the record showing Plaintiff's birthday as July 7, 1961. *See*, *e.g.*, [5] at 323, 322, 344, 349, 372.

opinion, Plaintiff was more than a year from being in the "advanced age" category. Moreover, even if Plaintiff had been in a borderline situation, the ALJ satisfied her obligation to ensure that age categories are not "mechanically" applied to the Plaintiff's detriment. *See Benton v. Colvin*, 2015 WL 5024521, at *6 (W.D. La. Aug. 24, 2015); *Stanridge-Salazar v. Massanari*, 2001 WL 502506, at *1 (5th Cir. Apr. 24, 2001). The ALJ's hypothetical to the VE assumed an individual of Plaintiff's age, education, work experience, and residual functional capacity. The VE opined that there were jobs in the national economy that Plaintiff could perform. The ALJ's reliance on VE's testimony, which accounted for Plaintiff's age, satisfied the ALJ's obligation in evaluating Plaintiff's situation.

***Additional Evidence Presented to the Appeals Council***

After the ALJ rendered her decision that Plaintiff was not disabled, Plaintiff appealed to the Appeals Council and submitted additional evidence to the Appeals Council. The additional evidence included the actual report for the MRI taken on April 9, 2015,[8] and an August 3, 2015, letter from a district manager of the Mississippi Department of Rehabilitation Services stating that in her opinion "Ms. Tackett is unable to return to work due to limitations with ambulation, standing, bending, lifting and severe pain." ([5] at 443-44, 456). Plaintiff argues that based on this additional evidence, the Appeal Council should have remanded the case to the ALJ for further consideration.

When the Appeals Council receives a request for review, it "may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge." 20 C.F.R. § 404.967. "The Appeals Council will review a case

---

[8] Previously, the record contained Dr. Smith's evaluation of the MRI, but not the report from the imaging company.

if—(1) [t]here appears to be an abuse of discretion by the [ALJ]; (2) [t]here is an error of law; (3) [t]he action, findings or conclusion of the [ALJ] are not supported by substantial evidence; or (4) [t]here is a broad policy or procedure issue that may affect the general public interest." 20 C.F.R. §404.970(a).  Claimants are permitted to submit new evidence to the Appeals Council, and such evidence may justify remand if it is material. *See Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003).  Evidence is material if it relates to the time period for which the disability benefits were denied and there is a reasonable probability that it would have changed the outcome of the disability determination. *Id.*

If new evidence is presented to the Appeals Council, a court will review the record as a whole, including the additional evidence, to determine whether the Commissioner's findings are supported by substantial evidence. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005); *see also Jones v. Astrue*, 228 Fed. App'x 403, 406-407 (5th Cir. 2007) (cautioning against remanding cases based on new evidence presented to the Appeals Council without meaningful regard for the substantial evidence standard).  A court should remand based on new evidence only if the new evidence is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination. *Higginbotham v. Barnhart*, 163 Fed. App'x 279, 281-82 (5th Cir. 2006).

Plaintiff points to the fact that the MRI shows "[m]oderate central T12/L1 and L2-3 spinal stenosis secondary to a dorsal disc herniation . . . ." ([5] at 443).  The MRI taken on October 28, 2013, however, showed "[m]oderate spinal canal stenosis involving T12/L1 and L2/L3." ([5] at 446).   Additionally, as previously discussed, Plaintiff's treating physician reviewed the MRI taken on April 9, 2015, and noted the following:

> MRI of the lumbar spine was reviewed with the patient and looks good; she has the usual post-op scar, nothing causing nerve compression.  Not much more to do at

this point.  Her thoughts today were focused on getting a copy of her medical
records to send to the lawyer helping her get disability.

([5] at 440-44).  Plaintiff has not established that the MRI report is so inconsistent with Dr.

Smith's findings and the ALJ's findings that it undermines the ultimate disability determination.

As for the letter from the Mississippi Department of Rehabilitation Services, the Court

notes that a disability finding by a governmental or nongovernmental agency is not binding on

the Commissioner. *Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990).  Moreover, after

considering the letter, the Court concludes that there is not a reasonable probability that the letter

would change the outcome of the disability determination as the ALJ specifically considered the

very abilities, limitations, symptoms, and complaints mentioned in the letter and ultimately

rendered a decision—providing much greater detail and analysis than the state agency letter—

that Plaintiff was not disabled.  The letter briefly mentions Plaintiff's surgery, physical therapy,

and treatment by Dr. Smith, which were all considered by the ALJ.  The letter does not mention

any other treatment, testing, or objective results, nor does it mention Dr. Smith's determinations

that Plaintiff's lumbar spine "looks good" and that she was not disabled.

## CONCLUSION

Based on the foregoing, the Court finds that the Commissioner's decision is supported by

substantial evidence and that no reversible errors of law were committed by the ALJ.

IT IS, THEREFORE, ORDERED that:

1.  Plaintiff's Motion for Judgment on the Pleadings [9] is DENIED,

2.  The Commissioner's final decision is AFFIRMED,

3.  This action is DISMISSED with prejudice, and

4.  A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be
    filed herein.

SO ORDERED this the 16th day of February, 2017.

s/Michael T. Parker
UNITED STATES MAGISTRATE JUDGE